IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ZURICH AMERICAN INSURANCE COMPANY )<br>and AMERICAN GUARANTEE AND )<br>LIABILITY INSURANCE COMPANY, )<br>)<br>Plaintiffs, )<br>)<br>vs )<br>)<br>)<br>CENTURY STEEL ERECTORS CO., L.P., )<br>)<br>Defendant. ) | Civil Action No. 19-998<br>Judge Fischer<br>Magistrate Judge Dodge |

## REPORT AND RECOMMENDATION

**I.      Recommendation**

It is respectfully recommended that defendant's motion to dismiss (ECF No. 10) be denied and that plaintiffs' motion for summary judgment (ECF No. 21) be granted.

**II.     Report**

In this action, Plaintiffs Zurich American Insurance Company ("ZAIC") and American Guarantee and Liability Insurance Company ("AGLIC") (sometimes collectively referred to as "Plaintiffs") seek a declaratory judgment that they have no duty to defend or indemnify their insured, Defendant Century Steel Erectors Company, L.P. ("Century Steel") with respect to third party claims brought against it in an action filed by California University of Pennsylvania (the "University") in the Court of Common Pleas of Washington County, Pennsylvania ("the Underlying Action").

Century Steel is the first named insured under a commercial general liability insurance policy issued by ZAIC and a commercial umbrella liability insurance policy issued by AGLIC. ZAIC is currently defending Century Steel in the Underlying Action under a reservation of

rights.

### A. Relevant Procedural History

The University commenced the Underlying Action in August 2018. That action relates to an incident that occurred on August 26, 2016, when a large section of concrete broke from the second level of a parking garage on campus and crashed to the ground. The University brought claims against the contractor who constructed the garage, Manheim Corporation ("Manheim"). Manheim subsequently joined Shockey Brothers, Inc., t/b/d/a Shockey Precast Group ("Shockey"), the supplier of the concrete, as an additional defendant.

Shockey then joined Century Steel and other additional defendants by writ and later filed a Complaint to Join Additional Defendants in February 2019 (the "Complaint to Join" or "J. Compl."). Shockey alleges two causes of action against Century Steel in the Complaint to Join: negligence (Count III) and breach of contract (Count IV). The Underlying Action remains pending at this time.

The instant action was commenced by Plaintiffs against Century Steel in August 2019 based upon diversity jurisdiction. (Compl. ¶¶ 4-15.)[1] Counts I and III of Plaintiffs' Complaint seek declaratory judgments that ZAIC and AGLIC, respectively, have no duty to defend or indemnify Century Steel in the Underlying Action. In Count II, ZAIC seeks reimbursement of the defense costs it has incurred in the Underlying Action.

Century Steel moved to dismiss the Complaint in September 2019 (ECF No. 10). In November 2019, Plaintiffs moved for summary judgment. (ECF No. 21). Both motions have been fully briefed (ECF Nos. 25, 26). Because both motions raise and address the same issues, both can be resolved at this time.

---

[1] ECF No. 1.

B.  Relevant Factual Background

**1. Basis of the Underlying Action**

The underlying facts in this case are uncontroverted.[2] The University entered into a contract with Manheim to construct a parking garage on campus using structural precast concrete supplied by Shockey. (Plaintiffs' Concise Statement of Material Facts) ("PCSMF") ¶ 1; Pls.' App. Ex. A.)[3] In its Complaint to Join, Shockey alleges that it entered into a subcontract with Century Steel on September 24, 2009 for the installation of 477 precast concrete structural and architectural precast pieces to form the parking structure of the garage, including the installation of double tee flange-to-flange connection devices known as MB Erector Connectors. (J. Compl. ¶ 39.)[4] Century Steel's work under the subcontract was limited to "unload[ing] and erect[ing] the precast members." As noted in Century Steel's written proposal, its work "excludes the furnishing of all pre-cast members, shims, connection material and accessories." (PCSMF ¶¶ 5-7.)

Shockey alleges that Century Steel owed a duty to the University and to Shockey to "perform the erection and installation of 477 precast concrete structural and architectural precast pieces for the parking structure and to install the MB Erector Connectors in a workmanlike manner and in accordance with the plans, specifications and drawings for the Project, and to perform welds in accordance with American Welding Society requirements and pursuant to product specifications for the MB Erector Connectors." (PCSMF ¶ 4.)

Shockey asserts claims of negligence and breach of contract against Century Steel in the Underlying Action. It claims that Century Steel's work under the subcontract was faulty in

---

[2] Plaintiffs filed a Concise Statement of Material Facts in support of their motion for summary judgment to which Defendant did not respond.
[3] ECF Nos. 23, 21.
[4] Pls.' App. (ECF No. 21) Ex. B.

3

various respects and that in performing its work, Century Steel breached the subcontract and deviated from contractual and industry specifications. Specifically, Shockey alleges in the Underlying Action that Century Steel was both in breach of the subcontract and that its work was negligent in the following identical respects:

- In failing to properly install the double tee members;

- In failing to perform its work according to the contract documents, as well as the American Welding Society requirements for welds and in conformance with industry standards;

- In failing to perform welds according to the contract documents;

- In performing inadequately sized welds on MB Erector Connectors throughout the garage; and

- In failing to place adjacent double tees in proximity to one another in accordance with the contract documents for the Project.

(PCSMF ¶ 8.)

Shockey avers that Century Steel's breach of the subcontract and negligence were "a direct and proximate cause of cracking of the double tee flanges and the August 26, 2016 collapse of a 20' long x 2' wide piece of concrete on the second level of the garage as described in Plaintiff's Complaint." (PCSMF ¶ 9.) Shockey seeks recovery from Century Steel on its negligence and breach of contract claims in the event that the University is entitled to recover against Shockey. (*Id*. ¶ 10.)

The University's losses and damages as a result of this incident are described in its Complaint as follows:

- The collapse of the Garage has had, and continues to have, serious financial impacts on the University.

- First, the University will incur significant repair costs to remediate the deficiencies in Manheim's work and make the Garage safe for use.

4

- In addition to repair costs, the University has also suffered damages from the loss of use of the Garage, including lost revenue.

- Additionally, the University has incurred expenses to provide alternative parking arrangements and operate additional shuttle bus services to transport students and faculty to and from other parking facilities.

- The University has also incurred significant legal and engineering expenses attributable to the collapse, in addition to substantial expenditure of staffing resources in response to the collapse.

(PCSMF ¶ 11.) Although Century Steel claims that the collapse of the parking garage crushed several parked cars, neither the University's Complaint nor the Complaint to Join includes a claim for damage to these vehicles. (*Id.* ¶¶ 11-12.)

### 2. Relevant Policy Terms

Century Steel is the first Named Insured under a commercial general liability insurance policy issued by ZAIC, No. GLO 3866009-13 (the "ZAIC Policy"), and a commercial umbrella liability insurance policy issued by AGLIC, No. AUC 9375600-13 (the "AGLIC XS Policy"). (PCSMF ¶ 13.) Both policies were in effect from July 23, 2016 to July 23, 2017. (*Id.*) The ZAIC Policy and the AGLIC XS Policy (collectively, the "Policies") were negotiated, produced, and delivered in Pennsylvania through Century Steel's authorized agent and insurance broker, Wells Fargo Insurance Services USA, Inc. (*Id.* ¶ 14.)

The ZAIC Policy provides occurrence-based commercial general liability coverage with a limit of $2 million per occurrence. It affords a defense and indemnity, subject to that limit, for "property damage" caused by an "occurrence" where such "property damage" occurs during the policy period, consistent with the following Coverage A (Bodily Injury and Property Damage Liability) insuring agreement:

SECTION I - COVERAGES

COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY

1. Insuring Agreement

a.  We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. ...
...
b.  This insurance applies to "bodily injury" and "property damage" only if:

    (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

    (2) The "bodily injury" or "property damage" occurs during the policy period…

(PCSMF ¶16.)  The term "occurrence" within Coverage A of the ZAIC Policy is defined as follows: "'Occurrence' means an accident, including continuous or repeated exposure to substantially the same or general harmful conditions." (*Id.* ¶17.)

The ZAIC Policy includes a "Pennsylvania Changes – Defense Costs Endorsement," which reads, in relevant part, as follows:

> If we initially defend an insured ("insured") or pay for an insured's ("insured's") defense but later determine that none of the claims ("claims"), for which we provided a defense or defense costs, are covered under this insurance, we have the right to reimbursement for the defense costs we have incurred.
>
> The right to reimbursement under this provision will only apply to the costs we have incurred after we notify you in writing that there may not be coverage and that we are reserving our rights to terminate the defense or the payment of defense costs and to seek reimbursement for defense costs.

(PCSMF ¶ 18.) The right to reimbursement for the defense costs ZAIC has incurred on behalf of an insured applies to defense costs relative to a "suit" which are advanced under reservation of rights pursuant to Coverage A of the ZAIC Policy. (*Id.* ¶19.)

The AGLIC XS Policy affords follow form excess liability coverage and umbrella liability coverage with a limit of $10 million per occurrence in accordance with the following insuring agreement:

> SECTION I. COVERAGE
>
> A. Coverage A - Excess Follow Form Liability Insurance
>
> Under Coverage A, we will pay on behalf of the insured those damages covered by this insurance in excess of the total applicable limits of underlying insurance. With respect to Coverage A, this policy includes:
>
> 1. The terms and conditions of underlying insurance to the extent such terms and conditions are not inconsistent or do not conflict with the terms and conditions referred to in Paragraph 2. below; and
>
> 2. The terms and conditions that apply to Coverage A of this policy.
>
> Notwithstanding anything to the contrary contained above, if underlying insurance does not apply to damages, for reasons other than exhaustion of applicable Limits of Insurance by payment of loss, then Coverage A does not apply to such damages. Also, Coverage A does not apply to any form of casualty business crisis expense insurance even if such insurance is afforded under underlying insurance or would have been afforded except for the exhaustion of the Limits of Insurance of underlying insurance.
>
> B. Coverage B - Umbrella Liability Insurance
>
> Under Coverage B, we will pay on behalf of the insured those damages the insured becomes legally obligated to pay by reason of liability:
>
> 1. Imposed by law because of bodily injury, property damage, or personal and advertising injury; or
>
> 2. Assumed under an insured contract because of bodily injury or property damage;
>
> covered by this insurance but only if the injury, damage or offense arises out of your business, takes place during the policy period of this policy and is caused

>by an occurrence happening anywhere. We will pay such damages in excess of the Retained Limit specified in Item 5. of the Declarations or the amount payable by other insurance, whichever is greater.
>
>Coverage B does not apply to any loss, claim or suit for which insurance is afforded under underlying insurance or would have been afforded except for the exhaustion of the Limits of Insurance of underlying insurance.

(PCSMF ¶20.)

For purposes of excess liability coverage, the term "occurrence" is defined by the underlying ZAIC Policy. (PCSMF ¶21.) With respect to umbrella coverage, the term "occurrence" is defined as: "With respect to bodily injury or property damage liability, an accident, including continuous or repeated exposure to substantially the same general harmful conditions." (*Id.* ¶ 22.)

On May 17, 2019, ZAIC agreed to defend Century Steel in the Underlying Action under a full reservation of rights. (PCSMF ¶ 24.) Century Steel elected to retain counsel of its choosing to defend its interests in the Underlying Action. (*Id.* ¶25.) ZAIC has paid all defense costs incurred by Century Steel in the Underlying Action, subject to the terms of its reservation of rights. (*Id.* ¶ 26.) In its reservation of rights, ZAIC expressly reserved its rights to withdraw from the defense, disclaim any indemnity obligation, and recover defense costs advanced on behalf of Century Steel. Its basis, among other things, was that because Shockey's claims are premised on breach of contract and faulty workmanship, including instances where faulty workmanship results in foreseeable damage to property other than the insured's work, they are not an "occurrence" under prevailing law and, thus, do not trigger a duty to defend or indemnify under the Zurich Policies. (*Id.* ¶ 27.)

C. <u>Analysis</u>

**1. Standard of Review[5]**

Pursuant to the Federal Rules of Civil Procedure, summary judgment is appropriate if there are no genuine disputes as to any material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(a). Summary judgment may be granted against a party who fails to adduce facts sufficient to establish the existence of any element essential to that party's case, and for which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party bears the initial burden of identifying evidence which demonstrates the absence of a genuine issue of material fact. Once that burden has been met, the non-moving party must set forth "specific facts showing that there is a genuine issue for trial" or the factual record will be taken as presented by the moving party and judgment will be entered as a matter of law. *Matsushita Elec. Indus. Corp. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). An issue is genuine only if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court of Appeals has held that "where the movant bears the burden of proof at trial and the motion does not establish the absence of a genuine factual issue, the district court should deny summary judgment even if no opposing evidentiary matter is presented." *National State Bank v. Federal Reserve Bank*, 979 F.2d 1579, 1582 (3d Cir. 1992).

In following this directive, a court must take the facts in the light most favorable to the non-moving party and must draw all reasonable inferences and resolve all doubts in that party's favor. *Hugh v. Butler County Family YMCA*, 418 F.3d 265, 266 (3d Cir. 2005); *Doe v. County of*

---

[5] For the reasons explained below, it is recommended that Plaintiffs' motion for summary judgment should be granted. As a result, it is not necessary for the Court to utilize the standard of review for Defendant's motion to dismiss.

*Centre, Pa.*, 242 F.3d 437, 446 (3d Cir. 2001).When a court is presented with cross-motions for summary judgment, each movant must show that no genuine issue of material fact exists; if both parties fail to carry their respective burdens, the court must deny the motions. *Facenda v. N.F.L. Films, Inc.*, 542 F.3d 1007, 1023 (3d Cir. 2008).

"A federal court sitting in diversity must apply state substantive law and federal procedural law." *Chamberlain v. Giampapa*, 210 F.3d 154, 158 (3d Cir. 2000) (citation omitted). The parties do not dispute that the Policies at issue must be interpreted under Pennsylvania law. Under Pennsylvania law, the insured has the burden of proving facts that bring its claim within the policy's coverage. *Koppers Co., Inc. v. Aetna Cas. & Surety Co.*, 98 F.3d 1440, 1447 (3d Cir. 1996). "By contrast, the insurer bears the burden of proving the applicability of any exclusions or limitations on coverage, since disclaiming coverage on the basis of an exclusion is an affirmative defense." *Id.* (citations omitted).

The Pennsylvania Supreme Court has held that "the interpretation of an insurance contract regarding the existence or non-existence of coverage is 'generally performed by the court.'" *Donegal Mut. Ins. Co. v. Baumhammers*, 938 A.2d 286, 290 (Pa. 2007) (quoting *Minnesota Fire & Cas. Co. v. Greenfield*, 855 A.2d 854, 861 (Pa. 2004)). When the language is unambiguous, a court must give effect to its language; if a provision is ambiguous, however, "the policy is to be construed in favor of the insured to further the contract's prime purpose of indemnification and against the insurer, as the insurer drafts the policy and controls coverage." *Id.* (quoting *Kvaerner Metals Div. of Kvaerner U.S., Inc. v. Commercial Union Ins. Co.*, 908 A.2d 888, 897 (Pa. 2006)). In this case, none of the parties contend that the insurance contracts at issue are ambiguous.

### 2. Analysis of Policy Language

Plaintiffs seek declaratory judgments that they do not have a duty to defend or indemnity Century Steel in connection with the Underlying Action. As the Third Circuit Court of Appeals recently summarized:

> in the context of a declaratory judgment action to determine an insurer's obligations, Pennsylvania courts consistently apply what is known as the "four-corners rule." *See Lupu v. Loan City LLC*, 903 F.3d 382, 389–90 (3d Cir. 2018) (collecting cases). That is, when a policyholder is sued, "an insurer's duty to defend is triggered, if at all, by the factual averments contained in [the underlying] complaint[.]" *Kvaerner*, 908 A.2d at 896; *Am. & Foreign Ins. Co. v. Jerry's Sport Ctr., Inc.*, 606 Pa. 584, 2 A.3d 526, 541 (2010); *Mut. Ben. Ins. Co. v. Haver*, 555 Pa. 534, 725 A.2d 743, 745-46 (1999) ("A carrier's duties to defend and indemnify an insured in a suit brought by a third party depend upon a determination of whether the third party's complaint triggers coverage."); *Ramara, Inc. v. Westfield Ins. Co.*, 814 F.3d 660, 673 (3d Cir. 2016).

*Sapa Extrusions, Inc. v. Liberty Mut. Ins. Co.*, 939 F.3d 243, 249–50 (3d Cir. 2019). *See also Kiely ex rel. Feinstein v. Phila. Contributionship Ins. Co.,* 206 A.3d 1140, 1146 (Pa. Super. 2019) ("The question of whether a claim against an insured is potentially covered is answered by comparing the four corners of the insurance contract to the four corners of the complaint.") Further, "because the duty to defend is 'broader' than the duty to indemnify, if a court determines that the former does not exist, neither does the latter." *Sapa,* 939 F.3d at 250.[6]

Among other things, the ZAIC policy imposes a duty to defend the insured against a suit, and to pay those sums that the insured becomes legally obligated to pay as damages, in which "property damage" is caused by an "occurrence." An "occurrence" under both Policies means "an accident, including continuous or repeated exposure to substantially the same or general harmful conditions." Century Steel claims that it has sustained a loss that is covered by the

---

[6] Because the duty to defend is determined by the court based on the four corners of the complaint, Century Steel's argument that the issue cannot be decided until the Underlying Action is resolved (ECF No. 25 at 3, 6) is unavailing.

Policies or that, at a minimum, ZAIC has a duty to defend it in the Underlying Action because the claim potentially could fall within the Policies' coverage. Thus, pivotal to the resolution of the current dispute is whether the allegations against Century Steel in the Underlying Action represent an occurrence that triggers a duty to defend and/or indemnify Century Steel. This first requires an analysis of the relevant policy terms.

The Pennsylvania Supreme Court's decision in *Kvaerner Metals Div. of Kvaerner U.S., Inc. v. Commercial Union Ins. Co.*, 908 A.2d 888, 897 (Pa. 2006), is instructive. In that case, after Kvaerner was sued by Bethlehem Steel for faulty construction of a coke oven battery, it sought coverage from its insurer, National Union, under two commercial general liability policies. Both policies have the same definition of "occurrence" as the Policies in this case. 908 A.2d at 897. As noted by the Pennsylvania Supreme Court: "The key term in the ordinary definition of 'accident' is 'unexpected.' This implies a degree of fortuity that is not present in a claim for faulty workmanship." *Id.* at 898. The court then concluded that:

> We hold that the definition of "accident" required to establish an "occurrence" under the policies cannot be satisfied by claims based upon faulty workmanship. Such claims simply do not present the degree of fortuity contemplated by the ordinary definition of "accident" or its common judicial construction in this context. To hold otherwise would be to convert a policy for insurance into a performance bond. We are unwilling to do so, especially since such protections are already readily available for the protection of contractors.

*Id.* at 899 (footnotes omitted). *See also Millers Capital Ins. Co. v. Gambone Bros. Dev. Co.*, 941 A.2d 706 (Pa. Super. 2007), *appeal denied*, 963 A.2d 471 (Pa. 2008) (water damage that resulted from subcontractor's faulty work in installing windows and a stucco exterior for a housing development was not an "occurrence").

The Third Circuit Court of Appeals and district courts within the Third Circuit have applied this reasoning to exclude faulty workmanship and breach of contract claims from the

definition of an occurrence. *See, e.g., Acuity, a Mutual Ins. Co. v. Knisley & Sons, Inc.*, 2016 WL 4223757 (W.D. Pa. Aug. 9, 2016) (failure to properly service a boiler did not constitute an occurrence); *Zurich Am. Ins. Co. v. R.M. Shoemaker Co.*, 2013 WL 1224104 (3d Cir. March 27, 2013) (neither faulty workmanship by a subcontractor nor foreseeable acts constitute an "occurrence"); *Specialty Surfaces Int'l, Inc. v. Continental Cas. Co.*, 609 F.3d 223 (3d Cir. 2010) (faulty workmanship, even when cast as a negligence claim, does not constitute an occurrence); *Nationwide Mut. Ins. Co. v. CPB Int'l, Inc.*, 562 F.3d 591, 596-97 (3d Cir. 2009) (failure to utilize proper quality control in evaluating the composition of a nutritional supplement was not an "accident" under an occurrence-based policy).

In the recent decision of *Sapa Extrusions, Inc. v. Liberty Mut. Ins. Co.*, 939 F.3d 243 (3d Cir. 2019), the Third Circuit Court of Appeals reviewed the law relevant to this issue. In that case, Sapa Extrusions, a manufacturer of extruded aluminum profiles used in aluminum-clad windows and doors, sought insurance coverage when it was sued by Marvin, the company to which it supplied these profiles, after customers complained that the aluminum parts of the doors and windows would oxidize or corrode. Sapa was insured under a number of different insurance policies, nineteen of which had the same definition of "occurrence" as the policy in *Kvaerner*. *Id.* at 252-53.[7]

With respect to these nineteen policies, the Court of Appeals held that the factual allegations in the complaint did not amount to an "occurrence" that would trigger coverage because the complaint alleged faulty workmanship and there was no unforeseeable, fortuitous event. "Put simply, it was 'largely within [Sapa's] control whether it supplie[d] the agreed-upon product,' so any liability flowing from Sapa's failure to deliver a product that met the agreed

---

[7] The Court's analysis of the remaining policies is not relevant to the issues in this case.

specifications was 'too foreseeable to be considered an accident.'" *Id.* at 256. Although Sapa argued that the situation was distinguishable because third-party property damage occurred, the Court of Appeals rejected this argument, stating:

> *CPB* and *Specialty Surfaces* both hold that any distinction between damage to the work product alone versus damage to other property is irrelevant so long as both foreseeably flow from faulty workmanship. *See CPB*, 562 F.3d at 597; *Specialty Surfaces*, 609 F.3d at 238-39. Sapa's briefing is silent on these cases. The bottom line is this: it was "certainly foreseeable that the product [Sapa] sold would be used for the purpose for which it was sold." *CPB*, 562 F.3d at 597. Marvin integrated Sapa's extrusions with its own products, and the eventual damage thus foreseeably exceeded the value of the extrusions themselves. We explained in *CPB* that "foreseeable acts which tend to exacerbate the damage, effect, or consequences caused *ab initio* by faulty workmanship also cannot be considered sufficiently fortuitous to constitute an 'occurrence' or 'accident' for the purposes of an occurrence-based CGL policy." 562 F.3d at 597 (citation omitted).

*Id.* (footnote omitted).

### 3. Claims Asserted Against Century Steel in Underlying Action

As discussed previously, Shockey asserts claims for negligence and breach of contract against Century Steel in the Underlying Action. Both claims arise from Century Steel's agreement to erect and install precast concrete pieces in the University's parking garage. In both causes of action, Shockey alleges identical wrongdoing on the part of Century Steel:

- Failing to properly install the double tee members;

- Failing to perform its work according to the contract documents, as well as the American Welding Society requirements for welds and in conformance with industry standards;

- Failing to perform welds according to the contract documents;

- Performing inadequately sized welds on MB Erector Connectors throughout the garage; and

- Failing to place adjacent double tees in proximity to one another in accordance with the contract documents for the Project.

According to Shockey's Complaint to Join, Century Steel's faulty workmanship and/or breach of

contract led to the collapse of a section of concrete on the second level of the garage. The University claims that it sustained the following damages due to the collapse of the concrete installed by Century Steel: repair costs to the garage; loss of use and revenue from the garage; expenses associated with providing alternative parking arrangements; and legal and engineering expenses and staffing resources. Shockey seeks contribution and/or indemnity for any damages recovered by the University and/or Manheim against Shockey and asserts that Century Steel is solely liable to them.

As outlined above, claims based upon breach of contract and faulty workmanship are not fortuitous, and thus, do not fall within the definition of "occurrence" as set forth in the Policies. Century Steel argues, however, that a review of the four corners of the Complaint to Join compels the conclusion that its allegations trigger, at a minimum, a duty to defend. It notes that even if the parking garage collapse is not found to be an occurrence once the Underlying Action is litigated on the merits, the duty to defend remains until a factfinder in that action makes that determination. Century Steel notes that where a complaint asserts multiple causes of action, and one of them constitutes a claim within the scope of the policy's coverage, the insurer has a duty to defend until and unless it can confine the claim to a recovery that is excluded from the scope of the policy. *Indalex, Inc. v. National Union Fire Ins. Co. of Pittsburgh*, 83 A.3d 418 (Pa. Super. 2013), *appeal denied*, 99 A.3d 926 (Pa. 2014). Further, as Century Steel correctly states, in determining the duty to defend, the factual allegations of the complaint are "liberally construed in favor of the insured." *Frog, Switch & Mfg. Co. v. Travelers Ins. Co.,* 193 F.3d 742, 746 (3d Cir. 1999).

The Complaint to Join alleges that Century Steel's negligence caused the garage's collapse and the University's damages include property, products and work that were not the

property, products or work of Century Steel.[8] Citing *Kvaerner,* Century Steel argues that while faulty workmanship is not an "occurrence" when it only results in damage to the workmanship itself, commercial general liability insurance policies are meant to provide coverage when the insured's work causes damage to property other than to property on which it worked. *See Pa. Mfrs. Indemnity Co. v. Pottstown Indus. Complex, L.P.,* 215 A.3d 1010, 1015 (Pa. Super. 2019), cited by Century Steel. Thus, it contends, because the collapse of the garage caused damage beyond what Century Steel installed, including other parts of the garage and several parked cars, this represents an occurrence as defined by the Policies and triggers a duty to defend.[9]

As Plaintiffs note, however, in *Pottstown,* the Pennsylvania Superior Court held that an occurrence-based policy does not afford coverage when an insured's faulty workmanship damaged the insured's product or "the project on which the insured worked." 215 A.3d at 1016. Moreover, although the flood in *Pottstown* constituted an unforeseeable, fortuitous event that caused damage to the tenant's inventory after the landlord failed to properly repair the roof, the Underlying Complaint in this case alleges that the garage collapsed *because of* faulty workmanship, including that of Century Steel. The collapse of the garage was not an unforeseeable, fortuitous event unconnected to the actions of Century Steel; it was directly the result of Century Steel's faulty workmanship.

Century Steel argues that:

In light of *Indalex*, insurers should no longer ask courts in declaratory judgment actions to examine the underlying complaint to determine if certain negligence-based causes of action were improperly alleged or otherwise violative of case law

---

[8] As Plaintiffs note, however, the Complaint to Join can only recover from Century Steel those damages that Shockey would be required to pay to the University as alleged in the Underlying Complaint, that is, damages for the partial collapse and resulting loss of the use of the parking garage, as well as the consequential economic losses resulting therefrom.
[9] Contrary to this assertion, the University does not seek damages relating to parked cars, only for repairs to the garage and consequential economic losses arising therefrom.

> and should be dismissed. So long as there is potential liability in the underlying complaint, the insurer has a duty to defend. *Id.*, at 426. Here, since negligence is alleged, it would be improper under *Indalex* for ZAIC not to defend Century Steel.

(ECF No. 11 at 6-7.) However, as explained above, the Court of Appeals for the Third Circuit has held that the issue is not whether the underlying complaint alleges a claim in negligence or breach of contract, but whether the loss is "reasonably foreseeable" and that, particularly in the case of an insured that is responsible for a component part of a project that is alleged to have failed and damaged other parts of the project, "foreseeable acts which tend to exacerbate the damage, effect, or consequences caused *ab initio* by faulty workmanship also cannot be considered sufficiently fortuitous to constitute an 'occurrence' or 'accident' for the purposes of an occurrence-based CGL policy." *Sapa*, 939 F.3d at 256.[10]

Century Steel is alleged to have improperly installed structural and architectural components of the parking garage, including failing to properly install the double tee members, failing to place them in proximity to each other and performing inadequately sized welds. These deficiencies are also described as the failure to perform this work in accordance with the contract documents. Simply put, Century Steel's workmanship is alleged to have been faulty and in breach of the subcontract. Thus, even under a liberal reading of the Complaint to Join, the factual allegations do not represent a fortuitous event, even when cast as negligence. *See, e.g., Kvaerner,* 908 A.2d at 899; *Specialty Surfaces,* 609 F.3d at 231; *CPB Int'l,* 562 F.3d at 596-97.

Moreover, the damages sought by the University, for which Shockey claims that Century Steel is solely liable, are limited to damage to the garage itself, the project on which Century Steel worked, and economic damages. Consequential damages are reasonably foreseeable.

---

[10] The Court of Appeals also noted that the *Indalex* case involved a different definition of "occurrence" than the language in *Kvaerner* and therefore led to a different result. *Id.* at 258.

*AM/PM Franchise Ass'n v. Atlantic Richfield*, 584 A.2d 915, 920-21 (Pa. 1990). It is reasonably foreseeable that faulty workmanship on structural concrete could result in a partial collapse of the garage. *Id. See also Sapa,* 939 F.3d at 255-26; *Gambone Brothers,* 941 A.2d at 713-14.

Thus, the facts pleaded in the four corners of the Complaint to Join do not amount to an "occurrence" under the Zurich Policies and do not trigger a duty to defend Century Steel in the Underlying Action.

Century Steel argues that Plaintiffs have admitted the possibility that coverage exists by agreeing to provide a defense in the Underlying Action. As Plaintiffs note, however, by defending Century Steel under a reservation of rights and then commencing this action, they have responded in a manner that is entirely consistent with the instructions of the Pennsylvania Supreme Court: "if the insurer is uncertain about coverage, then it should provide a defense and seek declaratory judgment about coverage." *American & Foreign Ins. Co. v. Jerry's Sport Ctr., Inc.*, 2 A.3d 526, 542 (Pa. 2010). "If the insurer is successful in the declaratory judgment action, it is relieved of the continuing obligation to defend." *Id.* As such, Plaintiffs' agreement to provide a defense in the Underlying Action under a reservation of rights and subsequently seeking a determination from the Court regarding their rights and duties do not represent an admission that they have a contractual obligation to defend and/or indemnify Century Steel.

Because Plaintiffs have no duty to defend Century Steel, there is no corresponding duty to provide indemnity in the event that Century Steel is found to be liable in the Underlying Action. Therefore, both Plaintiffs are entitled to a declaratory judgment as a matter of law.

### 4. Reimbursement of Defense Costs

Finally, ZAIC seeks reimbursement of defense costs that have been expended to date in the Underlying Action. Under Pennsylvania law, "an insurer is not entitled to be reimbursed for

defense costs absent an express provision in the written insurance contract." *American & Foreign Ins.*, 2 A.3d at 529. This is only the case, however, "[w]here the insurance contract is silent about the insurer's right to reimbursement of defense costs." *Id.* at 544. When the policy expressly provides for it, reimbursement is permitted. *See CAMICO Mut. Ins. Co. v. Heffler, Radetich & Saitta, L.L.P.*, 587 F. App'x 726, 731 (3d Cir. Oct. 10, 2014).

In this case, the ZAIC Policy explicitly provides for a right to reimbursement of defense costs if it is determined that coverage is not available under the Policy. As there is no coverage under its policy, ZAIC is entitled to recover the costs it has expended to defend Century Steel in the Underlying Action.

### III. Conclusion

For the reasons cited above, it is respectfully recommended that Century Steel's motion to dismiss (ECF No. 10) be denied and that Plaintiffs' motion for summary judgment (ECF No. 21) be granted.

Litigants who seek to challenge this Report and Recommendation must seek review by the district judge by filing objections by April 28, 2020. Any party opposing the objections shall file a response by May 12, 2020. Failure to file timely objections will waive the right of appeal.

Dated: April 14, 2020

PATRICIA L. DODGE
United States Magistrate Judge